# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| JOSEPH S., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:17-cv-00163-TWP-DML ) |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration, | ) ) ) |
| Defendant. | ) ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Joseph S. (the "Claimant") requests judicial review of the final decision of the Deputy Commissioner for Operations of the Social Security Administration (the "Deputy Commissioner"), denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the following reasons, the Court **AFFIRMS** the decision of the Deputy Commissioner.

## I. BACKGROUND

### A. Procedural History

On April 16, 2014, Claimant filed an application for DIB, alleging a disability onset date of July 5, 2013, due to bulging discs, arthritis in the back, back pain, and hearing loss. His application was initially denied on September 12, 2014, and again on reconsideration in October 2014. Claimant filed a written request for a hearing on October 23, 2014, and a hearing was held before Administrative Law Judge James J. Kent (the "ALJ"), on February 23, 2016. Claimant was present and represented by counsel. Norman Abeles, a vocational expert (the "VE"), also appeared and testified at the hearing. On March 23, 2016, the ALJ denied the application for DIB. Following this decision, on May 27, 2016, Claimant requested review by the Appeals Council.

The Appeals Council denied the request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Deputy Commissioner for purposes of judicial review. On September 1, 2017, Claimant filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.     Factual Background**

Claimant was born in 1960 and was fifty-two years old at the time of his alleged disability onset date. He is a high school graduate. Prior to the alleged onset of his disability, he worked as a warehouse supervisor until 2011 and then as a shipping and receiving coordinator from January to July 2013, where he prepared and packed orders of medical supplies for shipping.

In June 2013, Claimant began seeing Troy Smith ("Smith"), a chiropractor, to address his back pain. During the initial visit, Smith noted tenderness to palpation in the lower back and a slight limitation in flexation in the lumbar spine. An x-ray showed narrowed disc spaces but was otherwise unremarkable ([Filing No. 13-8 at 3](Filing No. 13-8 at 3)–4). During a follow-up visit two days later, Smith noted that Claimant suffered from "[p]ain and dysfunction due to subluxation complex, complicated by degenerative disc disease at L4 and L5 and pelvic unleveling of 7+ mm on the left." *Id.* at 6. Smith had Claimant perform several chiropractic adjustments and therapeutic exercises to increase his mobility and circulation and to decompress tissues. *Id.* Claimant reported a slight improvement in his lower back pain two days later. *Id.* at 7.

Smith provided similar treatments on several occasions between June and August 2013. Claimant consistently reported that the treatments were helping reduce his lower back pain. Smith recorded throughout the treatment notes that Claimant's prognosis was good with continued treatment. Smith's treatment records reflected Claimant's reports of increased passive joint motion and decreased symptoms after starting treatment. *Id.* at 8–20. On July 15, 2013, which was ten

2

days after the alleged disability onset date, Claimant told Smith that he felt good since his last visit a week earlier but noted that he had been on vacation and planned to return to work that day. *Id.* at 16. The following week, Claimant reported that he felt better since his prior visit and that he "had some mid back tightness at work but stretched it out." *Id.* at 17. His last treatment with Smith was on August 27, 2013. *Id.* at 20.

Nearly a year later, on July 16, 2014, Smith provided a medical statement on behalf of Claimant. Smith noted that Claimant's "condition improved while he continued to work. He felt better, but he was not 'cured.'" ([Filing No. 13-8 at 2](#).) Smith further noted that Claimant "had been dealing with chronic lower back pain for approximately 7 years prior to" beginning treatment with Smith, and an MRI showed Claimant had bulging discs. *Id.* Smith noted the different methods used to treat Claimant's pain and that Claimant had taken prescription pain medication at some point, but "he stopped taking these meds approximately 1 year prior to coming to our office and had only been using OTC pain medication such as Aleve and Tylenol, since." *Id.* Smith opined that "any job involving long term sitting" of more than one hour at a time "would be difficult and result in recurring back pain." *Id.* He also opined that "heavy or repetitive lifting would be difficult and painful." *Id.*

On October 9, 2013, Claimant saw his primary care physician, John Karl Grimm, D.O. ("Dr. Grimm"), for his annual physical examination and for complaints of chronic back pain. Claimant requested a prescription for pain medication. Dr. Grimm's physical examination revealed normal findings ([Filing No. 13-8 at 21](#)–24).

On August 1, 2014, as part of the disability application process, consultative examiner Marc B. Willage, M.D. ("Dr. Willage"), evaluated Claimant, who reported that his main complaint was low back pain that radiated down his left leg. Claimant stated that this pain started eight years

3

earlier and had gotten progressively worse. He explained to Dr. Willage that at his last job he frequently had to lift more than fifty pounds and was required to be on his feet for nine to eleven hours each day. He also reported that he had hearing loss in his left ear because of calcified bones. Dr. Willage observed that Claimant could not hear a whisper in his left ear from five feet away, and had no trouble getting on and off the examination table and into and out of a chair. Claimant had full strength in all of his extremities and full grip strength. Dr. Willage performed a range of physical examinations and the results were normal except for some tenderness in the spine. Dr. Willage opined that Claimant could stand or walk up to two hours per day; could bend, crawl, kneel, or climb for less than one hour per day; and could lift or carry up to twenty pounds occasionally and ten pounds frequently (Filing No. 13-8 at 28–33).

On September 8, 2014, x-rays were taken of Claimant's spine and compared to prior imaging from 2008. The comparison found mild progression in "some mild anterior endplate spurring" and "mild degenerative disc narrowing" in Claimant's lumbar spine. *Id.* at 35.

State agency reviewing physician, B. Whitley, M.D. ("Dr. Whitley"), offered an opinion on September 10, 2014, that Claimant was capable of lifting or carrying twenty pounds occasionally and ten pounds frequently, standing or walking for up to six hours per day, and sitting for up to six hours per day (Filing No. 13-3 at 6). Dr. Whitley opined that Claimant could frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, and occasionally climb ladders, ropes, or scaffolds. He reported that Claimant was limited in his hearing and needed to avoid concentrated exposure to noise, but he found no manipulative limitations. *Id.* at 7–8. Dr. Whitley's opinions were affirmed by state agency reviewing physician, M. Brill, M.D., at the reconsideration stage. *Id.* at 17–19.

An MRI of Claimant's lumbar spine was taken on October 29, 2014. It showed L5-S1 disc desiccation with moderate narrowing, moderate to severe foraminal stenosis, and severe facet arthropathy ([Filing No. 13-8 at 36](#)–37). At L4-L5, the MRI showed disc desiccation without narrowing, severe facet arthropathy, moderate central canal stenosis and mild to moderate foraminal stenosis. *Id.* Then on November 7, 2014, an MRI of Claimant's cervical spine was taken, which showed a disc herniation at C6-C7 with mild to moderate stenosis and flattening ventral cord abutting C7 nerve roots ([Filing No. 13-8 at 38](#)–39). The cervical MRI also showed a disc displacement at C5-C6 with mild stenosis. *Id.* Claimant received two steroid injections in his neck to treat his pain in November and December 2014. *Id.* at 45–46.

Carl M. Shapiro, D.O. ("Dr. Shapiro"), began treating Claimant on February 17, 2015. Claimant reported that the steroid injections relieved his arm pain but that he still had "a little bit" of intermittent shoulder pain. Claimant also reported some decreased grip strength but no loss of sensation. Dr. Shapiro noted some degenerative disc disease following a review of the MRIs. During the physical examination, Dr. Shapiro found that Claimant was in no acute distress. Dr. Shapiro performed a range of mobility, strength, and sensation tests; Dr. Shapiro found reduced grip strength in Claimant's left hand, but all other tests yielded normal results. Dr. Shapiro prescribed Claimant Percocet to help with the pain ([Filing No. 13-9 at 37](#)–38).

Claimant returned to Dr. Shapiro for further treatment on March 17, 2015. He reported considerable lower back pain, and informed that he had recently done a lot of housework. Dr. Shapiro believed Claimant's back pain was an acute flare up caused by this recent activity. All tests performed by Dr. Shapiro showed no abnormalities. Dr. Shapiro increased Claimant's pain medication but noted he was positive about Claimant's prognosis. *Id.* at 34.

Claimant continued to see Dr. Shapiro for treatment once a month until December 14, 2015. These subsequent treatment sessions were fairly similar. Claimant would report higher than normal levels of pain, usually coinciding with either an injury or higher than normal levels of physical activity. Dr. Shapiro would observe no acute distress, no change in mood or affect, and no negative results from a range of motor and sensory tests. After receiving another steroid injection, Claimant reported to Dr. Shapiro that it reduced his pain by 20–30%. Although during the course of these treatments Claimant consistently complained of slight but increasing numbness in his fingers and arms, none of the sensory tests revealed neuropathy. *Id.* at 2–31.

During the administrative hearing before the ALJ on February 23, 2016, Claimant testified that he could no longer physically perform his past work as a warehouse supervisor ([Filing No. 13-2 at 37](Filing No. 13-2 at 37)). He also testified that he could not pick up a ten pound object without considerable pain and would not even try to pick up a twenty pound object. *Id.* at 38. He described having numbness in both his hands. *Id.* at 40. Claimant also testified that he had hearing loss and could only hear out of one ear and had tinnitus in the other. *Id.* at 39. Regarding his back pain, he reported that he was unable to stand for more than five to ten minutes at a time before experiencing pain. The pain required him to lay or sit down, and he typically does so about ten times a day for about ten minutes at a time. Claimant also testified that his back pain would sometimes be severe enough that he could not leave the house, which happened about two or three times per week. He explained that his back pain affected his ability to use his arm. *Id.* at 42–44.

## II. **DISABILITY AND STANDARD OF REVIEW**

Under the Act, a claimant may be entitled to DIB only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R.

§ 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700

(7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Claimant met the insured status requirement of the Act through December 31, 2017. He then began the five-step sequential evaluation process. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since July 5, 2013, the alleged disability onset date. At step two, the ALJ found Claimant had the following severe impairments: degenerative changes and spondylosis of the cervicolumbar spine; obesity; left sided hearing loss; and "Chronic Pain Syndrome". At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

In determining Claimant's RFC, the ALJ explained,

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) as sitting for six hours of an eight hour workday; standing/walking for two hours of an eight hour workday; with the option to sit or stand at will provided this does not take the claimant "off task" for more than 10% of the workday; and work requiring hearing on the right side only with no concentrated exposure to noise and no fine hearing capability required.

([Filing No. 13-2 at 24](#)).

At step four, the ALJ determined that Claimant was capable of performing his past relevant work as a "Warehouse Supervisor" at the light, semi-skilled level, which is the level at which it is generally performed in the national economy. The ALJ proceeded to step five and alternatively found that there were jobs that existed in significant numbers in the national economy that Claimant could perform such as inspector, packer, or merchandise marker. Having determined that Claimant could perform his past relevant work as a warehouse supervisor as well as work in other jobs in the economy, the ALJ determined that Claimant was not disabled. Therefore, the ALJ denied Claimant's application for DIB because he was found to be not disabled.

## IV. DISCUSSION

In his request for judicial review, Claimant argues that the ALJ erred by failing to give controlling weight to his treating physicians and by failing to consider any of the necessary factors when deciding how much weight to give to his treating physicians' opinions. As a secondary argument, Claimant asserts that the ALJ improperly characterized the VE's testimony regarding his transferable skills to another job; however, it appears that Claimant abandoned this secondary argument in his reply brief.

Claimant asserts it is well-established that "[t]he ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). Where less than controlling weight is given to a treating physician's opinion, the ALJ must consider the length, nature, and extent of the treatment relationship, the frequency of examinations, the degree to which the opinion is supported by evidence, the opinion's consistency with the record as a whole, whether the doctor is a specialist, and "other factors." *See Oakes v. Astrue*, 258 Fed. Appx. 38 (7th Cir. 2007); *Lopez-Navarro v. Barnhart*, 207 F. Supp. 2d 870, 885 (E.D. Wis. 2002) (citing 20 C.F.R. § 404.1527(d)).

Claimant argues the ALJ erred when he gave only partial weight to the treating physicians' opinions for no other reason except that "these sources lack Social Security Disability Program proficiencies." ([Filing No. 13-2 at 26](#).) He asserts that this "explanation" does not rise to the level of specific, legitimate reasons constituting good cause for rejecting a treating physician's opinion. Claimant specifically points out that Smith opined he could not hold any job involving long-term sitting (greater than one hour), and this opinion is not found or addressed in the ALJ's decision. Also, the ALJ did not discuss anything related to the arm and hand numbness and difficulty

gripping as found in Dr. Shapiro's treatment records. Because the ALJ did not give specific, legitimate reasons constituting good cause for rejecting his treating physicians' opinions, Claimant asserts that remand is appropriate so that the ALJ can properly analyze and explain in his decision the treating physicians' opinions.

In response, the Deputy Commissioner asserts that Smith, a chiropractor, qualified his opinion by first reporting that he had not treated Claimant in approximately one year, and thus, it was difficult to make an assessment of Claimant's current condition. The Deputy Commissioner also asserts that Smith's opinion acknowledged Claimant had back problems for seven years before seeing Smith, and Claimant had continued working during that timeframe. When considered as a whole, Smith's opinion supports the finding that Claimant was not disabled.

The ALJ began his analysis by noting that Smith, a chiropractor, was Claimant's primary care provider. (Filing No. 13-2 at 25.) The Deputy Commissioner notes that under the regulations, as a chiropractor, Smith is not a "treating physician" and cannot offer "medical opinions". The Deputy Commissioner asserts that the ALJ's explanation that the treating providers lacked Social Security expertise and the evidence did not support further limitations is "consistent with the factors set forth in 20 C.F.R. § 1527 and are supported by the record." (Filing No. 21 at 16.) The Deputy Commissioner then points to medical records that support the ALJ's conclusion that Claimant was not disabled.

Regarding the evidence from Dr. Shapiro, the Deputy Commissioner asserts that the record shows the arm and hand numbness and difficulty with gripping were simply the complaints of Claimant and not the findings of Dr. Shapiro. The Deputy Commissioner points to other records from Dr. Shapiro that note improvements made by Claimant as well as physical examinations that resulted in normal findings.

11

The ALJ's statement regarding the "opinions" of Claimant's treating providers is as follows:

> The claimant's treating care provider's observations and opinions are assigned partial weight to the extent they are consistent with the above assigned work capacity assessment (1F and 2F). These sources had the opportunity to examine, test, and treat the claimant for various lengths of time and various frequencies. However, these sources lack Social Security Disability Program proficiencies. The evidence supports no further degree of limitation.

([Filing No. 13-2 at 26](#).)

The Seventh Circuit has explained that an "ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). If the opinion is not given controlling weight, the ALJ must "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Although Smith is a chiropractor who may not be a "treating physician" under the regulations, the ALJ still had to consider these same factors when deciding what weight to assign the opinions of a non-acceptable medical source. *See* 20 C.F.R. § 404.1527(f)(1). Additionally, the ALJ must explain his analysis in his decision. *See* 20 C.F.R. § 404.1527(f)(2).

Claimant argues that the ALJ's decision fails to provide specific, legitimate reasons constituting good cause for rejecting the medical evidence and opinions. *See Knight*, 55 F.3d at 313. The ALJ's decision fails to provide any discussion and analysis regarding the 20 C.F.R. § 404.1527 factors. The ALJ's statement that Claimant's medical providers "lack[ed] Social Security Disability Program proficiencies," could be said of any medical provider who does not work for the state agency. To defend the ALJ's decision, the Deputy Commissioner points to

numerous citations in the medical record in hopes of showing that substantial evidence supported the ALJ's determination that Claimant is not disabled.

The ALJ's decision discusses considerable evidence to support a finding of non-disability. The Deputy Commissioner's response brief also lists evidence favorable to a finding of non-disability as well as new rationale that is not found in the ALJ's decision. Importantly, if the opinion of the treating source is inconsistent with the record then it is unnecessary to go through all of the 20 C.F.R. § 404.1527 factors. The ALJ explained his rationale for giving only partial weight to Claimant's treating providers when he makes reference that "claimant's treating care provider's observations and opinions are assigned partial weight to the extent they are consistent with the above assigned work capacity assessment (1F and 2F)." Exhibit 1F contains Smith's treatment records from June 26, 2014. Smith explicitly qualifies his conclusions by twice noting that he had not treated Claimant for a year when he was asked to provide a letter for Claimant's disability application ([Filing No. 13-8 at 2](Filing No. 13-8 at 2)), and for this reason, it was "difficult to make a current determination of his status" and that, because of the lapse in treatment, he "cannot give a definitive opinion on his current condition." (*Id.*) Exhibit 2F contains Dr. Grimm's office treatment records from October 9, 2013 to October 11, 2013, following Claimant's annual physical examination. The records in 2F reflect that all of Claimant's tests following his annual examination were normal ([Filing No. 13-8 at 22-23](Filing No. 13-8 at 22-23)).

Claimant argues that although the treating care providers did not perform an RFC, that does not give the ALJ the ability to completely discount their opinions and fail to analyze them. SSR 96-8 requires that the "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p (S.S.A. July 2, 1996), 1996 WL

374184 at *7.  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).  Here, the RFC assessment does not conflict with the objective medical evidence or opinions, therefore the ALJ is not required to give a more detailed explanation of why the opinion was not adopted.  *See Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016) (opinions can be discounted if based upon a claimant's subjective complaints rather than objective medical evidence); *see also Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016).  Accordingly, remand is not required on this issue.

With respect to his second argument, Claimant contends the ALJ failed to properly characterize the VE's testimony regarding Claimant's transferable skills to another job.  As stated earlier, the Claimant did not address this argument in his Reply and it appears he may have abandoned it.  However, on the merits, this claim fails to warrant remand.  In response to Claimant's contentions, the Deputy Commissioner argues persuasively that the ALJ properly considered the VE's testimony and his step-five determination is supported by substantial evidence.  The Deputy Commissioner points out that the ALJ specifically identified the skills that Claimant testified to acquiring in his past employment.  (Filing No. 13-2 at 27.)  For example, the ALJ noted that, based on Claimant's descriptions of his prior work, Claimant "prepared reports, knew how to use warehouse machinery/tools, processed orders, and supervised a crew." (*Id.*)  As the ALJ pointed out, the VE testified that these skills would transfer to other light and semi-skilled work such as a shipping clerk. (*Id.*)  Moreover, the ALJ's step-five determination did not rely on the transferability of skills, (Filing No. 13-2 at 27-28), rather he relied in part on the VE's unchallenged testimony that Claimant was still capable of performing his past relevant work as a

warehouse supervisor. *Id*. Thus, the ALJ's step-five determination is completely consistent with the VE's testimony. *See Abbott v. Astrue*, 391 F. App'x 554, 558 (7th Cir. 2010).

## V. CONCLUSION

For the reasons set forth above, the final decision of the Deputy Commissioner is **AFFIRMED** and Claimant's appeal is **dismissed**.

**SO ORDERED.**

Date: 9/14/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

William Joseph Jenner
JENNER, PATTISON, HENSLEY & WYNN, LLP
jjenner@wjennerlaw.net

Catherine L. Gibbons
SOCIAL SECURITY ADMINISTRATION
catherine.gibbons@ssa.gov

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov